**KANOA INC., dba Body Glove Cruises, Plaintiff,**

v.

**William Jefferson CLINTON, in his official capacity as President of the United States; William Cohen, in his official capacity as Secretary of Defense; John H. Dalton, in his official capacity as Secretary of the Navy; William M. Bai-**ley, in his official capacity as Secretary of Commerce; Ann Tarboosh, in her official capacity as Chief, Permit Division, Office of Protected Resources, National · Marine Fisheries Services, Eugene Netta, in his official capacity as Protected Species Program Manager, Pacific Island Area Office, Southwest Region, National Marine Fisheries Service; Christopher W. Clark; Kurt M. Fristrup, Defendants.

CV No. 98–00250DAE.

United States District Court, D. Hawaii.

April 3, 1998.

Lanny Sinkin, Hilo, HI, for Kanoa Inc.

R. Michael Burke, Office of the United States Attorney, Honolulu, HI, Mark A. Brown, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for William Jefferson Clinton, William Cohen, John H. Dalton, William M. Bailey, Ann Terbush, Eugene Nitta, Christopher W. Clark, Kurt M. Fristrup.

## ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND DISMISSING PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE

DAVID ALAN EZRA, District Judge.

The court heard Plaintiff's Motion on March 27, 1998. Lanny Sinkin, Esq., appeared at the hearing on behalf of Plaintiff; Assistant United States Attorney R. Michael Burke, appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court DENIES Plaintiff's Motion for Temporary Restraining Order. This Order is filed in accordance with the court's March 27 Order Denying Plaintiff's Motion for Temporary Restraining Order.

### BACKGROUND

On December 17, 1997, Dr. Christopher W. Clark of Cornell University, applied for an Amended Permit for Scientific Research under the Marine Mammal Protection Act and the Endangered Species Act. The Amended Petition was sought to conduct Phase III of a research project developed to study the behavioral responses of breeding humpback whales and foraging sperm whales approximately ten miles off the coast of the Island of Hawaii.

A draft Environmental Assessment ("EA"), explaining the proposed research and environmental effects, was prepared regarding the amendment of the permit, and on December 23, 1997, the National Marine

Fisheries Service ("NMFS") published a Notice of receipt of the amendment request and draft EA in order to begin a 30–day public review and comment period. On January 29, 1998, the Hawaii Department of Business, Economic Development and Tourism, found that the research conducted in Phase III was consistent with the State's Coastal Zone Management Plan.

On February 7, 1998, the Navy held a public meeting on the Island of Hawaii to explain the research proposed in the Phase III plan.

In order to ensure validity of the process, NMFS performed the research required under the Endangered Species Act ("ESA") considering humpback whales are listed as endangered animals. It was concluded that issuance of the Amended Permit would not adversely affect the continued existence of any endangered species or threatened marine species, or result in the destruction or adverse modification of critical habitats.

After the entire process of public comment, and review of the application was completed, NMFS found that the proposed Phase III research would not operate to the disadvantage of endangered species, and that no adverse impact was anticipated on the humpback whales or the ecosystem off the coast of the Island of Hawaii. Consequently, the Amended Permit was issued by NMFS for the Phase III research on February 12, 1998. The research began on February 26, 1998, with an expectation that it would last through the end of March 1998.

The research includes the broadcasting of low frequency sounds into the marine environment off the west coast of the Island of Hawaii. The purpose the Phase III research is to determine what effects, if any, the sounds have on the humpback whales located off the Island of Hawaii. According to the Government, this research will help determine whether the United States Navy can safely use the low frequency active sonar system in order to detect submarines which

have been developed to operate in a quiet manner, which are difficult to detect with passive sonar systems. Defendants Memo. at 4.

The NMFS has included protective measures in the Amended Permit. Most significantly, and the main issue in this action, is the requirements that "[i]f any acute behavioral reaction from marine mammals is observed, transmissions would be suspended." Environmental Assessment at 47, Exhibit 8, Defendants' Memo.

On March 25, 1998, Plaintiff filed the instant Motion for Temporary Restraining Order and Preliminary Injunction.[1] On March 26, 1998, Defendants filed their Response to the Motion.

*DISCUSSION*

I. *Standing and Jurisdiction.*

■ Under Article III, the "judicial power" of federal courts is limited to the resolution of "cases" and "controversies." The constitution thus empowers federal courts to adjudicate the legal rights of litigants who present actual controversies. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process." *Id.* The power to decide the rights of individuals "is legitimate only in the last resort, as a necessity in the determination of real, earnest and vital controversy." *Id.* (citation and internal quotation marks omitted).

■ As a necessary element of the "case" or "controversy" requirement, federal courts have required that a litigant have "standing to challenge the action sought to be adjudi-

**1.** This is the fourth Motion for Temporary Restraining Order brought in an attempt to halt the Phase III research, in the United States Federal District Court, for the District of Hawaii. The other three motions, before separate federal judges, were denied. *See Ocean Mammal Institute v. Cohen,* Civ. No. 98–00160HG; *Fergerstrom v. U.S. Navy,* Civ. No. 98–00212ACK; and *Hawaii Green Party v. Clinton,* Civ. No. 98–00232ACK.

cated in the lawsuit." *Id.* The traditional standing doctrine is comprised of three elements. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted); *see also San Diego County Gun Rights Committee v. Reno,* 98 F.3d 1121, 1126 (9th Cir. 1996).

■ The party seeking to invoke the court's jurisdiction has the burden of establishing these elements. *Id., 504 U.S.* at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken as true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial." *Id.* (citations and internal quotation marks omitted).

■ At this stage of the proceeding, Plaintiff has alleged facts sufficient to meet the traditional standing requirements. Plaintiff has asserted an injury, a causal relationship between the injury and the challenged activity, and if Plaintiff's allegations are correct, a likelihood that the injury will be redressed by a favorable decision.

The court makes this finding without making any determinations as to the credibility of the evidence. Plaintiff insists that it is currently sustaining financial injury as a result of the sonar testing being conducted by Defendants. Plaintiff alleges that the scarcity of humpback whales off the west coast of the Island of Hawaii is directly caused by the sonar testing. Plaintiff contends that based upon the Amended Permit, if there is any abnormal reaction by marine life, the testing must be discontinued. According to Plaintiff, even though Defendants have been provided the information that the testing is causing erratic and abnormal activity in marine life, Defendants still failed to cease the testing as required by the permit. Thus, because there are few whales to see off the coast of the Island of Hawaii, as a result of the failure to stop the testing, Plaintiff has been forced to discontinue his whale watching tours. Presumably, Plaintiff's position is that if Defendants are ordered to refrain from further testing, the whales will return, in their usual numbers, and Plaintiff can then resume its commercial activity.[2]

Based upon Plaintiff's allegations, at this time, the court finds that Plaintiff has met the traditional standing requirements. However, there are additional standing requirements imposed by certain federal statutes, thus, the court must review the federal statutes upon which Plaintiff's claims rest to determine if standing is proper.

### 1. National Environmental Policy Act.

■ Plaintiff alleges jurisdiction, and therefore standing, under the National Environmental Policy Act ("NEPA"). Because NEPA does not provide a private right of action, the Administrative Procedures Act ("APA") provides the avenue for review of a final agency decision made pursuant to NEPA.

Section 702 of the APA states that "[a] person suffering legal wrong because of agency action ... within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (West 1996). The

**2.** It should be noted that the U.S. Navy has vigorously denied that the sonar testing has in any way altered the behavior of marine life off the coast of the Island of Hawaii. However, for purposes of standing analysis, the court assumes that Plaintiff's allegations are true.

APA only allows judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (West 1996). In the instant case, since the Amended Permit required a termination of the testing if any marine life abnormalities were seen, the final agency decision is NMFS's determination that the reported abnormalities of the marine life around the testing site did not warrant a cessation of the sonar testing.

■ A plaintiff bringing suit pursuant to the APA must meet additional standing requirements specific to the APA. *Douglas County v. Babbitt,* 48 F.3d 1495, 1499 (9th Cir.1995). Thus, in addition to the traditional standing requirements set out above, a plaintiff bringing suit under the APA must show that the injury that he suffered falls within the "zone of interests" that the relevant statute at issue was designed to protect. *See Nevada Land Action Assoc. v. U.S. Forest Service,* 8 F.3d 713, 715–16 (9th Cir.1993). The zone of interests test helps to ensure that only those suits that would further the statutory objectives are allowed, and those that would frustrate it are halted. *Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 397 n. 12, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). The Supreme Court explained that the purpose underlying the zone of interest test is "to ensure that the [plaintiff in an APA suit] would be a 'reliable private attorney general to litigate the issues of the public interest in the present case.'" *Id.* (quoting *Assoc. of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)).

■ As noted, the relevant statute here is NEPA. Therefore, to challenge agency decisions made pursuant to NEPA, Plaintiff here must show that the economic injury that it asserted is within the "zone of interests" protected by NEPA. In *Nevada Land,* the Ninth Circuit explained that

NEPA was enacted in order "to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man." 42 U.S.C. § 4321 (1988). The purpose of NEPA is to protect the environ-

ment, not ... economic interests.... Therefore, a plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA.

■ 8 F.3d at 716 (citations omitted). A plaintiff must therefore: "(a) allege a non-pretextual environmental injury; (b) show the claim is more than 'marginally related' to ... the purposes that underlie NEPA; and (c) ... [the] interests in the litigation must not be 'more likely to frustrate than to further statutory objectives.'" *City of Los Angeles v. U.S. Dept. of Agriculture,* 950 F.Supp. 1005, 1012 (C.D.Cal.1996) (internal citations omitted).

Here, Plaintiff does not meet the standing requirements articulated by the Ninth Circuit for suits brought under the APA and NEPA. Plaintiff has asserted purely economic interests. It alleges that it's business was disrupted and it lost money as a result of fewer whale sightings of the coast of the Island of Hawaii. Consequently, Plaintiff has failed to alleged a non-pretextual environmental injury. While there is no question that Plaintiff believes that the sonar testing may be negatively affecting the whales and other marine life, and is harmful to them, Plaintiff is not asserting injury on that basis, rather the injury is solely the loss of profits and business. Thus, Plaintiff has failed to meet the first factor of the zone of interests test, and has failed to meet the additional standing requirements of the APA. Hence, as Plaintiff does not have standing to bring suit pursuant to the APA and NEPA, this court lacks jurisdiction over Plaintiff's claims brought pursuant to those statutes.

*2. The Marine Mammal Protection Act.*

■ Plaintiff also alleges that jurisdiction is founded on the Marine Mammal Protection Act ("MMPA"). The MMPA was enacted to ensure the protection and conservation of marine mammals. 16 U.S.C. § 1361 (West Supp.1998). The statute specifically sets forth, however, that the Secretary of State, and not individual citizens, is delegated the power to enforce the provisions of the subchapter. 16 U.S.C. § 1377 (West 1985). The statute does not provide for a private right of

action for citizens to enforce the provisions of the MMPA. *See Strahan v. Coxe,* 127 F.3d 155, 160 (1st Cir.1997). However, the MMPA allows for a party opposed to the issuance of a permit to "obtain judicial review of the terms and conditions of any permit issued by the Secretary under this section." 16 U.S.C. § 1374(d)(6) (West 1985).

Plaintiff here has not brought his action under § 1374(d)(6), as Plaintiff is not attempting to review the terms of a permit. Instead, Plaintiff asserts that the NMFS's decision not to cease the sonar testing directly violates the MMPA. Therefore, the sole avenue for judicial review with regard to this statute would be the APA.

Again, Plaintiff is faced with the same difficulties as discussed above with regard to the "zone of interests" test. To properly maintain standing under the APA, Plaintiff must assert injuries that are in the zone of interests intended to be protected by the relevant statute, here the MMPA.

> The primary purpose of the MMPA is to protect marine mammals; the Act was not intended as a 'balancing Act' between the interests of the fishing industry and the animals.

> . . . . .

> The interest of the marine mammals come first under the statutory scheme, and the interests of the industry, important as they are, must be served only after protection of the animals is assured.

Committee for *Humane Legislation, Inc. v. Richardson,* 414 F.Supp. 297, 306–09 (D.D.C. 1976), *aff'd* 540 F.2d 1141, 1148 (1976). There is nothing in the statute that indicates that it was enacted to protect similar interests as those asserted by Plaintiff here. The statute discusses the importance of maintaining the marine life population through resource management, meaning that "the primary objective of their management should be to maintain the health and stability of the marine ecosystem." 16 U.S.C. § 1361(6) (West 1985). Consequently, Plaintiff does not have standing to bring this action under the APA and the MMPA, as the MMPA was not enacted to protect the economic interests that Plaintiff has asserted as injury.

### 3. *Endangered Species Act.*

 Plaintiff also asserts jurisdiction under the ESA. A plaintiff can file suit under the ESA

> (A) to enjoin any person … who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof; or

> (B) to compel the Secretary to apply, pursuant to section 1535(g)(2)(B)(ii) of this title, the prohibitions set forth in or authorized pursuant to section 1533(d) or 1538(a)(1)(B) of this title with respect to the taking of any resident endangered species or threatened species within in State; or

> (C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary.

16 U.S.C. 1540(g)(1) (West 1985).

If this action was commenced pursuant to the ESA, then it was brought under § 1540(g)(1)(A), as it is a suit to enjoin alleged violations of this statute. Plaintiff has standing to bring suit under the ESA because it has met the traditional standing requirements. However, the court does not have jurisdiction over Plaintiff's action brought pursuant to the ESA because Plaintiff has failed to comply with the jurisdictional requirements set out in the statute.

Prior to initiation of an action under § 1540(g)(1)(A), the Secretary and the entity violating the provision of the statute must be notified of the alleged violation. Specifically the statute provides that

> No action may be commenced under subparagraph (1)(A) of this section—

> (i) prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation; the statute further provides that no citizens suits can be commenced

16 U.S.C. § 1540(g)(2)(A) (West 1985). Plaintiff has provided no evidence, nor has it even alleged, that notice was given to both the Secretary and to Defendants sixty days

prior to the filing of this lawsuit. Hence, while Plaintiff has standing to bring this action under the ESA, the court lacks jurisdiction to hear any claims brought under the ESA as Plaintiff has failed to comply with the jurisdictional pre-requisites specifically set out in the statute.

■ While under the appropriate circumstances the court would have jurisdiction under the APA to make a limited review of NMFS's decision not to halt the sonar testing with the ESA as the relevant statute. Nonetheless, because of the additional standing requirements for suits brought under the APA, Plaintiff does not have standing to bring such a claim. The purposes of the ESA as set out in the statute itself are

to provide a means whereby the ecosystem upon which endangered species and threatened species depend may be conserved, to provide a program for the conservation of such endangered species and threatened species, and to take such steps as may be appropriate to achieve the purposes of the treaties and conventions set forth in subsection (a) of this section.

16 U.S.C. § 1531 (West 1985). Thus, Plaintiff's injuries, economic losses, are not within the zone of interests that the ESA was enacted to protect. As such, Plaintiff does not have standing to assert a claim for review of the NMFS's decision under the APA and the ESA.

### 4. Conservation and Protection of North Pacific Fur Seals.

■ In addition to the statutes addressed above, Plaintiff also alleges that this case arises under "the Fur Seal Act of 1966(FSA), 16 U.S.C. § 1151 et seq. ..." Complaint at 3. The Fur Seal Act ("FSA") specifically prohibits the taking of fur seals. *See* 16 U.S.C. § 1152 (West 1985). "Fur Seal" is defined under the act as the "North Pacific Fur Seal, Callorhinus Ursinus." 16 U .S.C. § 1151(d) (West 1985). The court finds Plaintiff's claim that the action arises under the FSA lacks merit. Plaintiff is suing based upon the allegations that there are few or no whales off the coast of the Island of Hawaii, and not that there are few or no fur seals off the coast of the Island of Hawaii. Plaintiff

asserts that it has sustained a loss of profits as a result of the decline of the humpback whales, not the fur seal. The court finds that the FSA has no relation at all to the current action brought by Plaintiff, and therefore that this case does not arise under or relate to the FSA. Therefore, the FSA does not provide a statutory basis for Plaintiff's suit.

### II. Final Analysis.

There is no question that this court has jurisdiction to conduct a limited review of an agency decision pursuant to the APA. However, because this court is a court of limited jurisdiction it must take care to ensure that it only maintains jurisdiction over those cases which meet the constitutional and prudential requirements critical to Article III jurisdiction. A plaintiff that brings suit in this court must meet the requirements imposed by Article III, as well as any requirements imposed by the relevant federal statute. Here, as the court has discussed in detail above, Plaintiff has failed to meet the constitutional and statutory standing requirements to bring this action. Therefore, the court DENIES Plaintiff's Motion for a Temporary Restraining Order, and DISMISSES Plaintiff's Complaint WITHOUT PREJUDICE.

### CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's Motion for a Temporary Restraining order, and DISMISSES Plaintiff's Complaint WITHOUT PREJUDICE, as Plaintiff lacks standing to bring the action.

IT IS SO ORDERED.